UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT PHILLIP BAKER, Pro Se
        Plaintiff

V.

Associate Justice Anthony Nesi
        Defendant

## COMPLAINT

### Parties

1.      The plaintiff is a resident of Haverhill, MA Essex County, Massachusetts and a citizen of the United States.

2.      The defendant's residency is unknown to the Plaintiff however upon information and belief the defendant is a resident of Bristol County and is employed in Taunton, MA and a citizen of the United States.

### Jurisdiction

3. The court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 42 U.S.C. 1983.

### Facts

4.      The plaintiff asserts he possesses unequivocal and absolute first-hand knowledge that the defendant engaged in extensive ex-parte conversations with opposing counsel, Val C. Ribeiro, Esq.,; James Ross, Esq. and Frank Corso, Esq. in the underlying Probate and Family Court docket Number BRD09DO177DR prior to the actual filing of the divorce complaint as referred to in the above docket number.

5.      The plaintiff asserts he possesses unequivocal and absolute first-hand knowledge that the

defendant and opposing counsel in the above referenced Probate and Family Court matter reached ex-parte agreements with opposing counsel as to the entirety of the conduct of the divorce in the preceding weeks, if not months, prior to the filing of the divorce complaint in the underlying docket number.

6.  The defendant had prepared his plan and conspiracy with opposing counsel and Melissa Baker resulting in a fair accompli as regards every effort the plaintiff made to fairly and justly adjudicate the entirety of the divorce proceeding.

7.  The above referenced communications and agreements in and of themselves rendered the divorce complaint; the defendant's judgment and orders void on their face and a nullity.

8.  The Plaintiff asserts that the defendant as regards these conversations, discussions and agreements as referenced herein was acting in a clear absence of all jurisdiction.

9.  The complaint for divorce had not even been filed yet without which the defendant established a prima facia demonstration of the defendant's certain and unequivocal absence of all jurisdiction even prior to the filing and docketing of the complaint for divorce.

10. The plaintiff asserts that without the Complaint and the attached motion (the lawsuit) the defendant had nothing whatsoever in which to exercise his jurisdiction.

11. The plaintiff asserts that the defendant acted without any authority whatsoever as regards the above enumerated conversations and agreements pursuant to legislative intent and such statutes and rules of court enacted pursuant to the Commonwealth of Massachusetts Rules of Civil Procedure; the Commonwealth of Massachusetts Rules of Probate and Family Rules of Procedure; and the Commonwealth of Massachusetts Rules of Domestic Relations Procedure; and to the Commonwealth of Massachusetts General Laws.

12. The plaintiff asserts these referenced conversations, discussions and agreements as related to the entirety of the Divorce pleading yet to be filed at that time denied the plaintiff his federal constitutional first Amendment rights of freedom of speech, liberty, freedom and as to the plaintiff's constitutional right to his Pursuit of Happiness; denied the plaintiff his rights to Access the Courts; denied the plaintiff his right to Due Process of the laws; denied the plaintiff his fourteenth amendment rights to Substantive and Procedural Due Process and the plaintiff's rights to Equal Protection of the Laws and the plaintiff's federal constitutional ninth Amendment rights

13. The plaintiff asserts that the defendant, opposing counsel, Melissa Baker, David Stanley and Mary Delores Stanley Melissa Baker's father and step mother respectively entered into and

agreed to a conspiracy to deny the plaintiff every possible effort to seek justice and advocate on his own behalf, and on behalf of the plaintiff's three (3) minor children, then ages eight (8) Noah Anne Baker; age (6) Judah Robert Baker and age four (4) Leah Jane Baker.

14. The plaintiff asserts that each and every communication and agreement of any nature in any form and the defendant was absent any jurisdiction to proceed with the yet to be filed Complaint for divorce.

15. The plaintiff asserts that the above conspiracy began weeks, if not months, prior to the filing of the divorce complaint while simultaneously the plaintiff, Melissa Ann Stanley-Baker, promised and vowed her brazen adulteries were at an end and acted as if the plaintiff and Melissa Baker were beginning a new life when in actuality Melissa Baker simply went "underground" with her adulteries.

16. Melissa Baker engaged in a brazen adultery with at least one paramour (Burton Grossman) which resulted in Noah Baker calling the plaintiff hysterical telling the plaintiff that "they are all over each other."

17. The plaintiff was served a summons and the complaint for divorce on the afternoon of February 11, 2009 captioned "Short-Notice Emergency" hearing set for February 13, 2009 at 9:00 a.m. little more than 24 hours later in violation of the Rules of Civil Procedure allotting twenty-days in which the plaintiff has to answer the divorce complaint.

18. Neither the defendant, nor opposing counsel, or Melissa Baker presented any verbal or written explanation for a Short-Notice Emergency hearing as required by the Massachusetts General Laws; the Probate and Family Rules of Court; the Rules of Civil Procedure; and the Rules of Domestic Relations Procedure.

19. There was in fact no emergency as the plaintiff had vacated the marital home and at the February 13, 2009 hearing the plaintiff was presented with a motion requesting the relocation of Melissa Baker and the three (3) minor children of this marriage to an address some 1400 miles away.

20. The plaintiff asserts that the motion was void on its face and a nullity as the defendant had no personal or subject matter jurisdiction regarding the complaint or the motion as a result of the absence of statutory or procedural notice of service on the defendant.

21. The plaintiff was provided no opportunity by the court to respond to either the complaint and in fact the plaintiff learned by happenstance that Melissa Baker and the minor children had been relocated on or about January 26, 2009 to the destination as noted above.

22. Melissa Baker, her adulterous paramour, Burton Grossman a 74 year-old married traveling salesman from Radnor PA, Melissa Baker's father, David Stanley, and Melissa Bakers step-mother, Mary Delores Stanley had kidnapped the three minor children of the marriage absent any court order which was not granted until twenty-two days later.

23. The plaintiff possesses first-hand information that the defendant herein knew of the kidnapping of the three minor children and failed to act in complete absence of jurisdiction.

24. The plaintiff offers as only one, among a multitude of an endless precise acts by the defendant and opposing counsel, a single irrefutable, unequivocal and specific order by the defendant conclusively demonstrating the aforementioned ex-parte discussions and agreements.

25. The defendant issued among his final orders that Melissa Baker must reside with her father if Melissa Baker is to retain custody of the three minor children.

26. The plaintiff is curious as to precisely what the defendant knew regarding Melissa Baker that the plaintiff did not know, and which was never revealed in any form or in any nature during the several minutes in totality of the entire divorce preceding that caused the defendant to issue this order.

27. The plaintiff also makes careful note that in the event that Melissa Baker did not reside with her father then the plaintiff's minor children were to be turned over to state authorities.

28. The defendant never on a single occasion recognized the existence of the plaintiff as the father of the children possessed of constitutional rights to parent; numerous case law citations issued by the federal circuit courts; and case law rulings of the United States Supreme Court, the plaintiff's and his own children's statutory right to each other's consortium which every case law authority; the Massachusetts General Laws; the overwhelming decisions by the federal circuit courts and the United States Supreme Court have ruled on each and every lawsuit regarding a parent's and their respective Loss of Consortium.

29. Loss of Consortium is a Loss of Society, Companionship, services, religion and the defendant must not have children of his own the plaintiff's children are blood of his blood.

30. "There is no such thing as half justice; we either have justice or we don't; we either have a democracy in which everyone, including the powerful is subject to the rule of the law or we don't." (John Joseph Moakley, 1991.)

31. The plaintiff asserts that the previously referenced ex-parte agreements; the absence of personal and subject matter jurisdiction as regards the plaintiff and his minor children individually and collectively renders the defendant's judgment and orders void on their face

and a nullity.

32. The defendant has not finished his violations of 42 U.S.C. 1983 violations.

33. The defendant ordered the register of the Probate and Family to prohibit the docketing of between thirty and forty of the plaintiff's motions and pleadings absent any notice whatsoever to the plaintiff.

34. The defendant had never on any single occasion criticized for any reason the plaintiff's filings.

35. The defendant had never on any single occasion stated the plaintiff's filings as vexatious.

36. The defendant never on a single occasion admonished the plaintiff for any single motion, pleading or any paper or document the plaintiff filed with the court.

37. The defendant never on any single occasion provided any reason or explanation as to prohibiting the plaintiff's filings be docketed.

38. The defendant acted once again in the complete absence of all jurisdiction in so ordering the register of the Probate and Family Court the prohibition against the docketing of every single paper the plaintiff filed with the court.

39. Among all the motions and pleadings and memorandum of law the plaintiff followed precisely those motions, pleadings and other papers as proscribed by the Commonwealth of Massachusetts Rules of Civil Procedure; The Commonwealth of Massachusetts Rules of Probate and Family Procedure; the Commonwealth of Massachusetts Domestic Relations Procedure and the Commonwealth of Massachusetts General Laws.

40. The Probate and Family Register may well be a member of the defendant's staff; however the Register of the Probate and Family Court is not employed by the defendant.

41. The defendant had never on a single occasion spoken to the plaintiff, or to Melissa Baker in the plaintiff's presence.

42. The defendant never on a single occasion provided any written document to either party as a form of evidence in which to make any inquiry regarding any matter or issue regarding the divorce including but not limited to custody or financial matters.

43. The defendant rejected the plaintiff's written and verbal request for discovery neither of which was docketed.

44. "The law is the witness and eternal deposit of our moral life. Its history is the history of moral development of the race." (Oliver Wendell Holmes, 1897)

45. The plaintiff is curious as to where the defendant's morals exist and precisely on any single occasion the defendant demonstrated his morals within this divorce.

46. The plaintiff filed a motion for an evidentiary hearing.

47. It was never docketed.

48. The plaintiff filed a motion for a Guardian Ad Litem to be appointed.

49. It was never docketed.

50. The plaintiff filed a motion for disqualification and recusal of the defendant from the above divorce docket number.

51. It was never docketed.

52. The plaintiff filed a Notice of Appeal.

53. It was never docketed.

54. The plaintiff filed a notice of enlargement of the August 5, 2009 divorce "trial" as Melissa Baker had the plaintiff falsely incarcerated for the fourth time and was exonerated and released from jail only four (4) days prior to the above trial date.

55. The motion for an enlargement of time was never docketed.

56. The plaintiff filed a pleading "Restraining the Removal of the Minor Children from the Commonwealth" which has a retroactive clause.

57. It was never docketed.

58. The plaintiff filed a motion for an enlargement of time in which to retain an attorney.

59. That motion was never docketed.

60. On August 5, 2009, the date of trial, there was no trial.

61. The defendant simply handed opposing counsel an order for sole legal and sole physical custody by Melissa Baker.

62. The plaintiff managed to ask three questions directed at the defendant: a request for discovery and an appointment of a custody evaluator, both of which were denied out of hand.

63. The third question was the location of the plaintiff's personal property located in Massachusetts, Kentucky and Florida.

64. Spontaneously, Melissa Baker and her father, David Stanley, and Melissa Baker's Step-Mother, Mary Stanley, admitted that they had sold everything the plaintiff had accumulated in his entire life which was all subject to a pre-nuptial and post-nuptial and scheduled in an Irrevocable Spendthrift Trust to the benefit of the plaintiff's three minor children including almost 40 years (at that time) as a senior officer (Colonel) of the United States Marine Corps Force Recon Special Operations Capable (the plaintiff was recently promoted to a Major General) and a civilian career as an investment banker specializing in insolvency's; crisis management;

corporate bankruptcy; restructuring and hotel and resort development.

65. The defendant took no action to the plaintiff's claim regarding his Ford Explorer which Melissa Baker and her father had stolen other than to retroactively issue in his orders absent any inquiry whatsoever that all the assets accumulated by the plaintiff over a period of time of 42 years now belonged to Melissa Baker.

66. The plaintiff is well aware of the prohibition under nearly all circumstance equity damages as to judicial officers and the reasons these policies are a matter of policy and protocol.

67. However, the plaintiff has been held to a higher standard all his life due to his military education; his flag officer rank; his numerous medals; his campaign ribbons and his particular Military Occupation Specialties.

68. It is the plaintiff's experience for nearly three years that the defendant has conducted himself in a shameful manner unbecoming to the office he holds and the public trust bestowed upon him.

69. While a judge is granted absolute immunity for equitable damages the converse must also be true that is a judge is held to a higher standard which is the reason the Canons of the Judiciary exist in the first instance.

70. The plaintiff asserts that the defendant has repeatedly and relentless conducted himself as a vigilante.

71. The defendants knowing and purposeful conduct collectively represents a conspiracy of the obstruction of justice which the plaintiff intends to file a criminal complaint with the United States Attorney.

72. The plaintiff will request of the United States attorney the extradition of Melissa Baker and her step-mother for their interstate theft and sale of the plaintiff's cash, cash equivalents and for the assets all of which was scheduled on a pre-nuptial and post-nuptial; for their kidnapping of the plaintiff's three minor children; for Melissa Bakers failure to pay child support since 2001 despite Melissa Baker's possessing the funds to pay the child support; for Melissa Baker's many Internal Revenue Service violations; for Melissa Baker's theft of student loan's totaling approximately $50,000.00; for Melissa Baker's court ordered psychiatric evaluation; for prosecution for many counts of fabricated violations of claimed by Melissa Baker for false arrest and false imprisonment; for the many and substantial fraud's against the Commonwealth of Massachusetts Department of Transitional Assistance and to participate in a lawful and legal divorce proceeding.

73. In addition Mary Stanley for the prosecution of kidnapping; the many counts of perjury by Melissa Baker including but not limited to Mary Stanley's suggestion for Melissa Baker fraudulently claiming our family were victims of both Hurricane Wilma and Hurricane Katrina; for the theft and sale of the plaintiff's personal property and for aiding and abetting the fraudulent claims contained in the fabricated original 209A order and the subsequent 209A order's; which the above frauds are but a minority of the federal frauds perpetrated.

74. "Where justice is denied, and any one class or individual is made to feel that society is an organized conspiracy to oppress, rob and degrade them, persons nor property will be safe. (Frederick Douglass, 1886)

75. It is the defendant's out-of-hand, indifferent and dangerous conduct engaging in continuous efforts of every kind and nature including to but not limited to direct correspondence with Melissa Baker while acknowledging Melissa Baker's attorney of record in the divorce robbing the plaintiff of his three minor children, the blood of his blood, and robbing them of their financial security in which given the circumstances the defendant is absent all jurisdiction to engage in these actions making no single inquiry whatsoever.

76. The defendant never issued an order for the proscribed automatic restraining order in relation to marital assets of which the defendant is absent all jurisdiction.

77. The defendant granted an ex-parte motion by opposing counsel excusing Melissa Baker from participating in a parenting course which the defendant is clearly absent the jurisdiction to do so.

78. The defendant in one of his final orders makes it a prohibition on the plaintiff to make any subsequent (appeal) effort or seek any ruling to alter the defendant's order for custody.

79. This order is another example in which the defendant is absent all jurisdiction.

80. The defendant ordered the parties to have psychiatric evaluations to take place in the Commonwealth bringing the records of past treatment.

81. Melissa Baker's and payment for the evaluation by her father engaged a psychiatric evaluation in Tampa, Florida beyond either a subpoena for deposition or cross-examination.

82. Melissa Baker knowingly, purposefully and with malice aforethought withheld from this psychiatrist her diagnosis as Mentally Incapacitated; her diagnosis of a paranoid/delusional disorder; her diagnosis of a narcissistic personality disorder; her diagnosis of schizophrenia; her diagnosis of Bipolar I Disorder; her active drug and alcohol addiction; her kidnapping of the minor children of this marriage; her rampant adulteries and pregnancies through two

marriages; her fraudulent theft of approximately $50,000.00 in student loans; her filing a joint return without the knowledge of the plaintiff fraudulently claiming we were victims of Hurricane Katrina taking a $16,500.00 deduction and receiving a $1,710.00 refund which she failed to report to either of her federal or state public assistance; claiming fraudulently in the Commonwealth of Kentucky to receive public assistance we were victims of Hurricane Wilma; her failure to file tax returns from a settlement from her prior marriage of millions of dollars; her failure, despite possessing the funds, of paying child support from her first marriage since 2001(her frauds on her SSI assistance, and state assistance in the Commonwealth of Massachusetts, Florida and Kentucky.

83. The defendant prohibited the introduction of all of the above, including Melissa Baker found as fact by the family court in her first divorce as morally unfit to parent and all her Parental Rights were Involuntarily Terminated as to two minor children of Melissa Baker's first marriage who are siblings of the children of this marriage.

84. The defendant is not finished in his conduct in which he is absent all jurisdiction.

85. The plaintiff filed an appeal seeking a change of venue/transfer of case/modification of custody.

86. The defendant answered in place of the appeals court that jurisdiction to the divorce proceeding was now within the jurisdiction in the state of Florida six months after Melissa Baker and the plaintiff's children moved to their "illegal" residence at 4455 Ashton Meadows Way, Wesley Chapel, Florida.

87. Once again the defendant acts in a clear absence of all jurisdiction.

88. The defendant is legally and therefore absent all jurisdiction from unilaterally conferring on a sister state jurisdiction regarding any matter including but not limited to divorces which took place in another state.

89. The plaintiff responded to the defendant that pursuant to the Uniform Child Jurisdiction Act which conforms as a matter of the Good Faith and Credit Act the Home State of the minor children is the state in which they resided for the six (6) months prior to the commencement of the divorce proceeding.

90. This divorce proceeding began on February 13, 2009 and the records of the Commonwealth's Department of Transitional Assistance will reflect that the residency of the children and the family began in December of 2007, more than two years earlier.

91. The defendant ignored the plaintiff's document asserting his facts as law and legally binding.

92. This is another occasion in which the defendant has acted in clear absence of all jurisdiction.

93. A trial court judge lacks neither the jurisdiction nor the legislative authority to make or change law, especially law established in two methods by the Congress of the United States of America.

94. The plaintiff also cited the federal equivalent to the "treaty" between the states cited as the Parental Kidnapping Prevention Act (PKPA) which reads precisely as does the Uniform Child Jurisdiction Act i.e. the six (6) month residency requirement.

95. Again the defendant acts in the absence of all jurisdiction whatsoever in fabricating some law to suit his own purposes with the attempt to instruct Melissa Baker to claim jurisdiction in the State of Florida.

96. The plaintiff asserts that the only reason the defendant responded to the plaintiff in more than two and a half years is that the plaintiff sent a copy of the plaintiff's answer to the defendant also to the Chief Justice of the Probate and Family Court the Honorable Paula Carey.

97. The plaintiff uses the term illegal as to the relocation to Wesley Chapel, Florida for several reasons.

98. In the first instance the spontaneous motion for relocation to a location 1400 miles away was absent the Notice of Service necessary for a motion, and violated the plaintiff's federal constitution's first Amendment rights; the Plaintiff's Access to the court's; the plaintiff's federal Constitutional rights to redress those wrongs committed against him; the plaintiff's due process rights; the plaintiff's federal constitutional ninth Amendment rights; the plaintiff's federal constitutional procedural and substantive due process rights, and the plaintiff's federal constitutional rights to Equal Protection of the Laws.

99. The defendant was absent all jurisdiction to alter the order of trial as set forth and proscribed to all the aforementioned authorities.

100.    The motion itself suborned perjury, and stated that the three minor children and Melissa Baker had resided in Wesley Chapel from their respective births until April 2007.

101.    The three minor children were all born while residing in Boca Raton, Florida and lived there in the same house until 2005 at which time the entire family relocated to North Carolina.

102.    No member of our family had ever heard of Wesley Chapel Florida nor been within hundreds of miles of Wesley Chapel, Florida.

103.    While the motion asserted that Melissa Baker and the children (no mention of the plaintiff) had resided in Wesley Chapel Florida until April 2007 the tax assessors records indicated the house in which they all were claimed living wasn't constructed until 2008.

104.    The plaintiff finds no mystery as to the defendant's obstinacy in disqualifying and

recusing himself despite there having existed for nearly two years a lawsuit by the plaintiff against the defendant and a more than obvious conflict of interest, and conclusive impropriety and unmitigated bias on behalf of the defendant.

105.     The defendant finds it abhorrent and a very tangible threat to his misconduct in this matter.

106.     Since November 2009 if the plaintiff's full name is entered into Google the very first entry on the first page is the plaintiff's lawsuit against the defendant.

107.     If there ever existed a situation which mandated the disqualification and removal of a judge from both presiding and simultaneously refusal to preside over a lawsuit this is the occasion.

108.     Shortly after the defendant arbitrarily, capriciously and with wild abandon deprived the plaintiff and his children of each other's love and loss of consortium and literally stole millions of dollars from the plaintiff and his children the plaintiff sought an independent action to be re-united with his children, and claim the funds intended for their future.

109.     The plaintiff's ex-wife had filed fabricated allegations of violations of a fabricated Abuse Prevention Order against the plaintiff which kept the plaintiff incarcerated for three months (the third time) before the plaintiff was exonerated.

110.     While the plaintiff was free the plaintiff left jail each time three months later in the same clothes he entered jail.

111.     The plaintiff had no place to live; had no vehicle (stolen by Melissa Baker and her father)

112.     The plaintiff's ex-wife had sold their home and emptied it of absolutely everything.

113.     The plaintiff's ex-wife also stole the plaintiff's Ford Explorer, and emptied the plaintiff's bank accounts.

114.     The plaintiff understood for the first time in his 59 years what homeless meant.

115.     The plaintiff still persisted in his quest for his children and stolen assets in the Taunton, MA Superior Court.

116.     What the plaintiff was unsuspecting of, and what the plaintiff was subjected to, was the surveillance of the court's security officer, Charles Matzeis, who observed the plaintiff's efforts regarding this defendant, another judge, the Honorable Judge Savignano at that time presiding in the Attleboro District Court, and prominent attorneys in Bristol County.

117.     Matzeis began harassing the plaintiff by entering the law library and ordering the plaintiff to move from using one computer to another computer.

118.     It occurred long after this particular conduct by Matzeis that Matzeis was reading what
         the plaintiff was drafting.

119.     Matzeis then placed a prohibition on the plaintiff by restricting the plaintiff's time
         utilizing the courthouse law library from entering the law library in the Taunton Superior Court
         law library an hour later than the rest of the public and leaving the law library an hour earlier
         so Matzeis could look at the materials the plaintiff was preparing.

120.     Ultimately Matzeis completely banned the entry of the plaintiff from the courthouse in
         which the plaintiff had filed his lawsuit and had the only law library available to the plaintiff.

121.     Quickly the plaintiff began preparing an enormous amount of materials and because
         the plaintiff had no choice but to sleep outside on the ground through most of the winter of
         2009-2010 the plaintiff made the strategic error of seeking the assistance of the Taunton Police
         Department.

122.     The Taunton Police Department through connivance, feigned caring regarding the
         plaintiff's homelessness and the plaintiff's significant loss of weight; through subterfuge and
         conspiracy ultimately broke into the plaintiff's apartment in the plaintiff's absence and
         confiscated the plaintiff's thousands of documents and forced the plaintiff to leave Taunton for
         Boston.

123.     Each and every time the plaintiff  managed to get on his feet his ex-wife claimed
         another fabricated violation of the Abuse Prevention Order again resulting in months of
         incarceration leaving jail in the same clothes in which the  plaintiff entered and penniless.

124.     In the first instance the Taunton Police Department permitted the plaintiff to store the
         plaintiff's eight (8) 45 gallon heavy duty trash and garbage bags containing thousands of legal
         documents in the lobby of the Taunton Police Department a clear and decisive violation of
         every police department regulation.

125.     Next, the Taunton Police Department stored all the plaintiff's above heavy duty trash
         and garbage bags in the Taunton Police Departments evidence room.

126.     Another clear and unequivocal violation of Law Enforcement regulations.

127.     Finally, a Taunton Police Department patrolman utilizing a Police Department cruiser
         transported all the plaintiff's personal property to the plaintiff's new apartment in a rooming
         house owned by two Taunton Patrolman along with more than $3,300,000.00 assessed value
         of multiple rooming houses.

128.     During this time officers of the Taunton Police Department attempted to get the plaintiff

admitted to a psychiatric hospital on three occasions all but one effort succeeded despite the plaintiff not fitting the profile of in-patient psychiatric care.

129.     Upon the plaintiff's return from the hospital the plaintiff's rooming house apartment had been broken into by the Taunton Police and all the bags as mentioned above had been stolen.

130.     The plaintiff was not behind on his rent.

131.     It took the plaintiff some time to realize that the assistance in every regard was trickery.

132.     This court may well be disgusted with the failure of the plaintiff filing his actions to fruition however with no bus fare or postage and sleeping outside absolutely precluding the plaintiff completing his actions in this court.

133.     Behind all of this was the defendant.

134.     An Abuse Prevention Order (209A) is normally within the province of the Probate and Family Court in a divorce however the defendant ordered that the 209A order remain with the Attleboro District Court where it originated and the defendant ordered that Judge Savignano be exclusively assigned to hear the plaintiff's sixth attempt to be heard to have the order Vacated and Expunged from the State Registry which is honored by all 50 states and makes custody extremely difficult.

135.     On the appointed day for hearing Judge Savignano refused to hear the plaintiff's motion.

136.     The plaintiff was the last party to learn of all the conspiracy's designed and perpetrated to deny the plaintiff his statutory, constitutional and God given right to be with his children.

137.     These babies in their innocence; their inability to understand why their daddy doesn't love them and want to be with them and being told they will never see their daddy again because the "judge" said so, and being told their daddy hurt their mommy must be suffering these years in a way the plaintiff can only attempt to understand.

138.     "The judge said so" and no judicial immunity exists contrary to rulings of the United States Supreme Court establishing the unequivocal Right of the plaintiff to parent his children.

139.     This judge made no single inquiry nor received any document or testimony despite the plaintiff filing motions to permit witnesses never docketed.

140.     The defendant without so much as a spoken word; this judge without so much as a single document; this judge without so much as any inquiry stole from the plaintiff his three (3) babies, their financial security, and stole their daddy for no reason.

141.     The immunity provided a judge doesn't provide them absolution, if anything it's quite

the opposite.

142.    The plaintiff is not seeking anything whatsoever than the plaintiff's federal constitution rights without which our society would turn to anarchy.

143.    In the first instance and absent any jurisdiction this defendant has brought shame to the judiciary in its entirety.

144.    Each and every time the plaintiff enters the Moakley building housing this court the plaintiff reads and copies all those quotations embedded in stone along the entrance and in the lobby regarding the justice, fairness, stewardship, rightness, integrity and character in which our society looks to the judges of our great nation.

145.    The defendant has trampled on the underpinnings and bedrock to those ideals so ardently expressed and for which this great Commonwealth looks to for direction.

For my three suffering children.

Robert Phillip Baker    *Robert Phillip Baker*

3 Park Street, Second Floor, Studio One

Haverhill, MA 0183

978-476-5328

bakerman426@hotmail.com